|  | AUSA: | Sarah Resnick Cohen | Telephone: (313) 226-9637 |
|---|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | Stephen Remner, FBI | Telephone: (313) 965-3896 |

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Michigan

United States of America

v.

**VERDINE DAY**

Case No.

Case: 2:21–mj–30439
Assigned To : Unassigned
Assign. Date : 9/17/2021 Description:
COMP USA v. SEALED MATTER
(SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___December 1, 2015 - October 17, 2019___ in the county of _____Wayne_____ in the ___Eastern___ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1344(2) | Bank Fraud |
| 18 USC § 1343 | Wire Fraud |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
Complainant's signature

_FBI Special Agent Stephen Remner_
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ___September 17, 2021___

City and state: ___Detroit, Michigan___

_____
Judge's signature

Jonathan Grey,  U.S. Magistrate Judge
Printed name and title

AFFIDAVIT

I, Stephen Remner, being duly sworn, depose and state the following:

1.  I have personal knowledge of the facts set forth in this affidavit with the exception of the matters expressly stated to be based upon information and belief.

2.  I make this affidavit with personal knowledge based on my participation in this investigation, including witness interviews by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

3.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses. I have worked at the FBI Detroit Field Office since September 2003 and have been involved with investigations involving labor union fraud and embezzlement as well as bank fraud and wire fraud.

4.  Based on the facts set forth in this affidavit, there is probable cause to believe that VERDINE DAY did knowingly execute a scheme and artifice to obtain the moneys and funds owned by or under the control of federally insured financial institutions, in violation of Title 18, United States Code, Section 1344(2)(Bank Fraud) and with intent to defraud and for the purpose of executing a scheme to defraud caused the transmission of wire communications in interstate commerce, in violation of Title 18 United States Code, Section 1343 (Wire Fraud).

1

## BACKGROUND

5. The Detroit Fire Fighters Association, Local 344, International Association of Fire Fighters (DFFA) represents a bargaining unit comprised of all non-civilian positions within the City of Detroit Fire Department, including fire chief, fire marshal, fire captain, and fire fighter. The unit also includes several civilian positions such as fire dispatcher, supervisor of fire apparatus, and auto repair foremen.

6. The DFFA was incorporated on May 8, 1933, chartered by the International Association of Fire Fighters (IAFF), as a Michigan Domestic non-profit corporation filed on June 8, 1935. It is considered a 501(c)(5) Labor Organization with the purpose to protect or promote the interest of the members by bargaining collectively with their employer to secure better working conditions, wages, or similar benefits.

7. As set forth in its Constitution and By-Laws (Article I, Section 4), "the local shall be free to operate, set policy and govern itself according to the power given it by the Constitution and By-Laws, except where that operation, policy, or government shall conflict with the provisions of the International Association Constitution and By-Laws, the Local's Articles of Association and pertinent law."

8. The DFFA, "its officers, representatives, and members shall recognize, observe, and be bound by the provisions of the Constitution and By-Laws of the International Association of Fire Fighters and the interpretations rendered by the International general President, the resolutions, decisions, and directives of the Executive Board of officers of the Association when made in conformity with the authority granted by the Constitution and By-Laws of the Association, and the resolutions adopted and policies established by the delegates at conventions."

9. VERDINE DAY was hired by the Detroit Fire Department on or about February 3, 1986. She worked as a firefighter, engineer, and held other positions in the union before being elected by her peers to the executive board of the DFFA as Treasurer on or about November 2015. She held the position of Treasurer from December 1, 2015 until her retirement from the DFFA and the City of Detroit on or about September 13, 2019. As an Executive Board Officer, DAY also served on the DFFA Board of Directors along with the other executive officers and district directors.

10. As set forth in its Constitution and By-Laws (Article X, Section 6)(The Duties of the Treasurer), DAY was responsible for, *inter alia*: (a) receiving monies due to the union and providing receipts for payments received; (b) maintaining receipts of any payments made with union funds for necessary expenses and/or supplies; (c) maintaining and keeping safe the monies of the union; (d) maintaining records detailing all monies received; (e) maintaining records of all monies expended and the purpose for which payments were made; and (f) providing an itemized financial report at monthly membership meetings.

11. DAY was also responsible for maintaining a petty cash fund, collecting initiation fees from Firefighters, providing an itemized financial report at monthly Membership meetings, and forwarding the annual audit to the International General Secretary-Treasurer.

12. For her services as Treasurer, DAY received a salary of 40% of the base pay of a fire fighter per year. In addition to a salary, DAY received an expense account which included a monthly car allowance, a cell phone allowance, paid parking, and a credit card provided by DFFA. An American Express card was provided to DAY

3

by the DFFA and was to be the primary card used by DAY. However, in the event

it was not accepted, the DFFA provided DAY with a Bank of America card. All

credit card charges were required by the DFFA to be supported with a receipt

maintained by DAY.

13. When DAY travelled out of town for DFFA related business, allowable expenses

included event registration fees, housing, airfare/car rental, and long/short term

parking at airports.

14. According to its Constitution and By-Laws (Article XIV, Section 3)

(Disbursements), "the funds of this Association shall be used only to defray the

necessary expense of the organization, and only as provided for in Article X-

Section 1 and 2 of the Constitution and By-Laws[1]. No money shall be paid for any

purpose except legitimate expenses without a two-thirds (2/3) vote of the members

present in a combined monthly Membership meeting."

15. The DFFA, I.A.F.F. Local 344 Board of Directors Policy Manual, Section 4

(Standards of Conduct) outlines the rules and standards of conduct all Board of

Directors are expected to follow. Prohibited conduct includes, *inter alia*, theft or

inappropriate removal or possession of property, falsification of expenses, and using

Association equipment for purposes other than business.

---

[1]Article X Section 1 and 2 of the Constitution and By-Laws refers to Duties of the Executive Board and Board of Directors regarding decisions which call for immediate action prior to a regular meeting of the Board of Directors or monthly membership meeting: "In cases of emergency, they shall have the authority to appropriate and expend, if necessary, expenditures not over $1,500.00, which may be vital to the best interest and welfare of the membership, provided that appropriations so made or bills so paid, shall be reported to the Board of Directors or Membership at the first meeting following the action."

16. According to Section 4.8 (Credit Card Policy) of the DFFA, I.A.F.F. Local 344 Board of Directors Policy Manual, "Executive Board Officers, by virtue of the confidence put to them by the membership will, at all times, use reason and attention to the DFFA's budget. These Credit Cards are to be used with good judgement and to further the aims and goals of the members of Local 344. At no time will these credit cards be used for a personal nature." DAY was prohibited from using DFFA credits cards or monies for any personal expenses or purchases.

## PROBABLE CAUSE

17. The DFFA maintained five deposit accounts at Comerica Bank prior to December 1, 2015. DAY moved the accounts to Chemical Bank in April 2019 and left approximately $22,000 in one account at Comerica. In addition to opening the Chemical Bank accounts, DAY secured a Chemical Bank credit card. The Chemical Bank credit card was known as a "First Bankcard" credit card.

18. The DFFA maintained revolving credit accounts with American Express, Bank of America, and Chemical Bank. As Treasurer, DAY was provided a credit card for each of the credit accounts.

19. According to www.FDIC.gov: Chemical Bank has been insured by the FDIC since March 14, 1917; Comerica Bank has been insured by the FDIC since January 1, 1934; and Bank of America has been insured by the FDIC since January 1, 1934.

20. American Express is a financial and travel services corporation with operations in over 130 countries. Its products include charge cards, credit cards, financial services, and travel related services. When DAY used the DFFA American Express credit card to purchase merchandise or services, the merchant would swipe the card on the merchant's terminal which transmits signals by wire in interstate commerce

to computers and representatives of American Express to obtain authorization for
the sale. American Express, located outside the State of Michigan, would
electronically verify the credit number belonged to an actual account holder and
instantly transmit authorization back to the merchant through wire in interstate
commerce.

21. The DFFA has used Quickbooks as their accounting system since early 2010.
Quickbooks is a small business accounting software platform businesses and
organizations use to manage income and expenses and keep track of the financial
health of their business. It can be used for invoicing customers, paying bills,
generating reports, and preparing taxes.

22. On or about February 2020, the DFFA hired an outside firm to conduct an independent
audit of the Association's finances including but not limited to its bank accounts, credit
cards, expense reports, and record keeping. The audit included examining the audit trail
on the Quickbooks software used and maintained by the DFFA.

23. The "audit trail" function of Quickbooks provides a "fingerprint" detailing all
changes entered in a Quickbooks file. It tracks who made the entries,
modifications, voids, and deletions. It shows every time a change to a name, date,
or amount in any entry had been posted in the accounting system.

24. The audit trail and other financial analysis revealed that, between December 1, 2015
and October 17, 2019, checks were written and printed with "Verdine Day" as the
payee. However, in the Quickbooks system, VERDINE DAY changed her name to
a vendor, charity, or another individual.

25. The table below details some of the above-described activity by DAY:

| Check Number | Date | Original Payee | Changed Payee in Quickbooks by VERDINE DAY | Amount | Bank |
|---|---|---|---|---|---|
| 15704 | 7/9/2018 | Verdine Day | Undisclosed Law Office | $24,000.00 | Comerica |
| 15995 | 3/25/2019 | Verdine P. Day | Undisclosed Law Office | $24,000.00 | Comerica |
| 14907 | 6/26/2016 | Verdine Day | IAFF (International Association of Fire Fighters) | $1,370.00 | Comerica |
| 15280 | 7/21/2017 | Verdine Day | Special Olympics- Midland Robinson Golf | $344.00 | Comerica |
| 15550 | 3/2/2018 | Verdine Day | Fire and Police Dive Team | $500.00 | Comerica |
| 15738 | 8/1/2018 | Verdine Day | Detroit Children's Hospital | $1,000.00 | Comerica |
| 1013 | 4/22/2019 | Verdine Day | Detroit Branch of the NAACP | $1,500.00 | Chemical |

26. In addition, the review of the Quickbooks Audit Trail report showed checks which had been voided by VERDINE DAY. An examination of the bank statements and cleared checks, however, showed that the voided checks were cashed and made payable to VERDINE DAY.

27. In total, during the four years DAY served as Treasurer of the DFFA, DAY falsely obtained approximately $167,900.00 of the moneys and funds owned by or under the control of Comerica, Chemical Bank, and Bank of America, federally insured financial institutions, by (1) issuing checks in her name and then changing the name of the payee

7

to conceal her activity (2) cashing checks which were voided by her in Quickbooks and

(3) writing checks made payable to cash.

28. VERDINE DAY also used the DFFA credit accounts as her own personal credit cards

by making purchases outside normal DFFA travel and business expenses while she was

Treasurer and after she retired. The purchases included:

    a.    Multiple incidences of personal airfare, excess baggage fees, and travel insurance and in-flight purchases for DAY and her husband including the following:

- 05/09/2016     Southwest Airlines (Detroit to Las Vegas)    $715.92
- 10/17/2018     Delta Airlines (Detroit to Atlanta)    $1,249.20
- 05/14/2019     Delta Airlines (Detroit to Ft. Myers)    $535.20
- 06/24/2019     KLM Royal Dutch Airlines    $93.82

    b.    Multiple lodging accommodations at domestic and international hotels and resorts and rental cars for DAY and her husband including the following:

- 05/10/2016     Sixt Rent A Car Myrtle Beach, SC    $453.85
- 01/22/2017     Hotel Hacienda Del Rio Tijuana, Mexico    $219.42
- 01/25/2017     Hotel Hacienda Del Rio Tijuana, Mexico    $119.85
- 03/27/2017     Residence Inn Bronx, NY    $1,188.09
- 12/18/2017     Hampton Inn and Suites Hollywood, FL    $265.29
- 08/18/2018     AirBNB    $504.92
- 04/15/2019     Lehigh Resorts-Lehigh Acres, FL    $234.15
- 06/12/2019     Ramada-Apollo Amsterdam    $100.77

    c.    Personal vehicle registration fees including the following:

- 08/24/2016     Michigan SOS online transaction    $41.00
- 09/04/2019     Secretary of State Kiosk    $446.69

    d.    Car washes

    e.    Fuel purchases

    f.    Personal car insurance premiums

    g.    Personal telephone and communications service

    h.    Satellite and cable TV service

    i.    Personal retail store purchases

j.      Purchases of cruise line vacations, purchases made during cruises, and purchases
        made at international duty-free stores including the following:

|   |            |                       |            |
|---|------------|-----------------------|------------|
| • | 09/23/2016 | The World of Travel   | $838.00    |
| • | 12/15/2017 | Royal Caribbean       | $9,553.04  |
| • | 06/24/2019 | Brilliance of the Seas| $6,100.70  |
| • | 08/12/2019 | Carnival Cruise       | $353.26    |
| • | 10/6/2019  | Liberty of the Seas   | $8,975.98  |

k.      Purchases at U.S. and State of Michigan parks including the following:

|   |            |                              |          |
|---|------------|------------------------------|----------|
| • | 12/22/2017 | Michigan Parks and Harbors   | $608.00  |
| • | 04/22/2019 | Michigan Parks and Harbors   | $290.00  |
| • | 07/05/2019 | Michigan Parks and Harbors   | $168.00  |

l.      Personal purchases at furniture stores

m.      Personal purchases at home improvement stores

n.      Alcohol and food purchases including the following:

|   |            |                              |          |
|---|------------|------------------------------|----------|
| • | 11/04/2017 | Firekeepers Kabaret          | $61.70   |
| • | 04/29/2018 | Applebee's Niagara Falls     | $213.73  |
| • | 05/22/2019 | Casino Bar/Sequel Toledo, OH | $101.00  |
| • | 10/04/2019 | Bubba Gump Cozumel           | $106.00  |

29. The approximate total amount of unauthorized purchases made by VERDINE DAY

    using DFFA credits cards is as follows:

| Credit Card                | Approximate Amount |
|----------------------------|--------------------|
| DFFA American Express       | $9,065.65          |
| DFFA Bank of America x3796  | $3,586.49          |
| DFFA Bank of America x3975  | $880.27            |
| DFFA Bank of America x4243  | $6,634.18          |
| DFFA Bank of America x8522  | $1,425.50          |
| DFFA First Bankcard         | $25,551.56         |
|                             | **$52,143.65**     |

30. Based on the above information, there is probable cause to believe that VERDINE DAY

    did knowingly execute a scheme and artifice to obtain the moneys and funds owned by

    or under the control of Comerica, Chemical Bank, and Bank of America, federally

insured financial institutions in violation of Title 18, United States Code, Section 1344(2)(Bank Fraud).

31. Based on the above information, there is also probable cause to believe that VERDINE DAY, by charging the DFFA American Express card for personal purchases unrelated to the DFFA, caused the transmission of wire signals in interstate commerce for the purpose of executing a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

Respectfully submitted,

Stephen Remner, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means

Jonathan Grey
United States Magistrate Judge

Dated:_____September 17, 2021_____

10